**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JUDY M. DIXON,            ) | |
|                           ) | |
|    Plaintiff,     ) | |
|                           ) | |
|                           ) | |
| v.                        ) | Case No. 4:23-CV-1583-SPM |
|                           ) | |
| LELAND DUDEK,             ) | |
| Commissioner of Social Security,[1]  ) | |
|                           ) | |
|                           ) | |
|    Defendant.     ) | |

**MEMORANDUM OPINION**

    This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Leland Dudek, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Judy Dixon ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 5). Because the Court finds the decision denying benefits was supported by substantial evidence, the Court will affirm the Commissioner's denial of Plaintiff's application.

    **I.**    **FACTUAL BACKGROUND**

    At the hearing before the ALJ, Plaintiff testified that, following two cervical surgeries, she has pain in her neck, shoulders, arms, hands, and lower extremities, and that she suffers from migraines, spasms, and arthritis. (Tr. 47-51). For pain management, she communicated that she

---

[1] Leland Dudek is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted as the defendant in this suit.

takes hydrocodone, uses heating pads and ice packs, and has undergone physical therapy. (Tr. 49-50). According to Plaintiff, barometric pressure changes worsen her pain and warmth generally helps with her pain. (Tr. 57-58). Plaintiff also conveyed that she takes a muscle relaxer for her spasms and was planning to undergo surgical implantation of a spinal cord stimulator to help with neuropathy symptoms felt in her fingers and feet, which inhibit her sleep at night. (Tr. 49-51).

Plaintiff performs daily chores such as laundry, dishes, and caring for a dog, but she moves slowly and often needs to sit or lie down due to pain. (Tr. 52-53). Pain and stiffness prevent her from staying in any position for an extended period of time, such as more than 20 minutes in a straight back chair. (Tr. 53). She often drops and breaks items, and she stumbles moving between spaces. (*Id.*). She can use her hands for 30 to 60 minutes at a time before feeling weakness and tingling, after which time she must rest for 90 minutes in order for symptoms to subside. (Tr. 54). She uses a thumb brace for portions of each day to assist with her hand pain. (Tr. 55). Plaintiff reported difficulties with concentration and memory that have worsened over time. (Tr. 56-57).

With regard to Plaintiff's medical treatment, the Court will cite to specific portions of the transcript as needed to address the parties' arguments. Briefly, the record shows that since 2021 Plaintiff has frequently sought treatment for pain (and sometimes tenderness, numbness, spasms, or tingling) in various parts of her body (including her neck, hips, back, hands, wrists, and feet) through frequent visits to a rheumatologist, a pain management clinic, a neurologist, and other providers. Plaintiff has been treated with physical therapy and various medications. Her treatment providers have noted diagnoses or possible diagnoses that include seronegative spondyloarthropathy, inflammatory arthritis, post-laminectomy syndrome, cervical spondylosis with radiculopathy, chronic pain syndrome, complex regional pain syndrome, neuropathy, and migraine.

2

The record does not contain opinion evidence from any treating sources, but it does contain two opinions from state agency medical consultants. On February 18, 2022, state agency medical consultant Susan Rosamond, MD evaluated Plaintiff's medical records and opined that in light of Plaintiff's impairments, Plaintiff would be limited to light work with some additional postural, manipulative, and environmental limitations. (Tr. 103-09). On April 13, 2022, Michael O'Day, DO, evaluated Plaintiff's medical records and also opined that, in light of Plaintiff's impairments, Plaintiff would be limited to light work with some additional postural, manipulative, and environmental limitations. (Tr. 111-17).

## II.   PROCEDURAL BACKGROUND

On October 28, 2021, Plaintiff applied for DIB, alleging that she had been unable to work since October 19, 2021 due to hip pain, back pain, back surgeries, numbness and tingling, and rheumatoid arthritis. (Tr. 18, 257). Her application was denied initially and on reconsideration (Tr. 129-33, 145-49). On April 22, 2022, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 18, 151). After a hearing, the ALJ issued an unfavorable decision on February 8, 2023. (Tr. 15-37). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, but the Appeals Council declined to review the case on October 11, 2023. (Tr. 1). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is

disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*,

4

648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

5

## IV.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff has not engaged in substantial gainful activity since October 19, 2021, the alleged onset date; that Plaintiff had the severe impairments of seronegative inflammatory arthritis/spondyloarthropathy, mild degenerative osteoarthritis of the bilateral hands, mild to moderate lunate erosion of the second and third metacarpophalangeal (MCP) joints, mild degenerative osteoarthritis of the bilateral feet, with a small plantar calcaneal spur of the right foot, complex regional pain syndrome, and migraine; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20-22). The ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. She can engage in occasional stooping, kneeling, crouching, and crawling. She can never engage in overhead reaching. She can engage in frequent fine and gross manipulation. She cannot work at unprotected heights or around moving mechanical parts or any other such hazards. She cannot perform work involving vibration, such as would be required by the operation of heavy equipment, drills, jackhammers, or other such devices. She can have no concentrated exposure to extreme cold or humidity.

(Tr. 23-24).

The ALJ found that, although "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," nonetheless "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 25). The ALJ noted that examination findings contained "some degree of abnormalities" alongside a general exhibition of "intact grip, with full range of motion, and full strength in all of her extremities at her rheumatology appointments." (*Id.*).  For example, the ALJ observed that the rheumatology

records reflected both the claimant's "swelling and/or tenderness in multiple joints generally," while at the same time reflecting "intact grip and full strength and range of motion in her upper extremities." (Tr. 27; *see, e.g.,* Tr. 751-752, 758-59).  The ALJ acknowledged that the abnormalities in Plaintiff's examinations warranted limitations—such as restrictions on reaching overhead, climbing, and exposure to workplace hazards—in addition to other limitations on postural maneuvers, vibration, and extreme cold due to Plaintiff's "general body pain." (Tr. 28). However, she expressed that such limitations were adequately reflected in the RFC she described. (*Id.*).

As further support for her RFC determination, the ALJ pointed to inconsistencies in the record between Plaintiff's allegations of disability and her statements to providers at various points in her medical treatment.  For example, the ALJ took note of Plaintiff's statements that the pain in her lower extremities occurred mostly at night (Tr. 28). *See, e.g.,* Tr. 750 ("Overall joints feel slightly better but her toes feel worse in the later part of the day"), 757 ("[Plaintiff is] [s]till having pain in her legs at night").  Of further note to the ALJ was Plaintiff's report that she had been more active due to having a new puppy. (Tr. 28, 750). In combination with Plaintiff's statements that medications were helping with symptoms, these reports by Plaintiff were, in the ALJ's determination, not reasonably consistent with her allegations of disability, "such that she can only walk for 200 feet before she has to stop and rest, for example" (Tr. 28).

The ALJ also considered the medical opinions in the record. She found the prior administrative findings of state agency consultants Susan Rosamond, M.D., and Michael O'Day, D.O., to be well supported by citations to the medical records and largely consistent with the other evidence as a whole. (Tr. 29).  The ALJ accordingly found their medical opinions to be largely persuasive. (*Id.*). However, in the RFC, the ALJ imposed slightly greater restrictions than the

7

consultants recommended on Plaintiff's overhead reaching and bilateral handling and fingering, due to Plaintiff's "inflammatory arthritis and other abnormalities involving her neck, left shoulder, and both hands." (Tr. 29, 106-07, 114-15).

Relying on a vocational expert's testimony regarding a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience), the ALJ found that Plaintiff is able to perform past relevant work because her RFC did not preclude the activities, as actually and generally performed, involved in her previous work as a claims analyst and as an administrative assistant. (Tr. 29). The ALJ alternatively found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 30-31). Thus, the ALJ concluded that Plaintiff has not been under a disability from October 19, 2021, through the date of the ALJ's decision. (Tr. 31).

## V. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because the ALJ failed to properly evaluate Plaintiff's subjective complaints, resulting in a defective RFC.

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the

Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103s ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. Subjective Complaints

Plaintiff argues that the ALJ's evaluation of Plaintiff's subjective complaints of pain is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ gave insufficient or no consideration to her Clinical Disease Activity Indices (CDAI) results, her prescribed hydrocodone, Dr. Gheith's recommendation for surgical implantation of a spinal cord stimulator, Dr. Gheith's observations of atrophy of her cervical spine, and the psychological evaluation she underwent to qualify for the spinal cord stimulator surgery. She also contends that the ALJ did not accord enough weight to Plaintiff's allegations regarding her ability to manually perform fine and gross movements.

9

In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017). To evaluate Plaintiff's subjective complaints, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. However, "[t]he ALJ is not required to discuss each *Polaski* factor as long as  [s]he "acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).  For the following reasons, the Court finds that the ALJ conducted an adequate assessment of Plaintiff's complaints of pain symptoms, consistent with SSR 16-3p and the relevant regulations, and that the assessment is supported by substantial evidence.

Insofar as Plaintiff specifically asserts that the ALJ failed to acknowledge certain medications, treatments, or examination notes, "[a]lthough required to develop the record fully

10

and fairly, an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citing *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998)). Moreover, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Id.* This Court also notes that the ALJ did not entirely discredit Plaintiff's complaints of pain and included multiple limitations accordingly. *See, e.g.,* Tr. 28 ("Furthermore, the claimant's general body pain and other symptoms from inflammatory arthritis, her headaches, and her reports of lumbar pain reasonably result in limitations regarding postural maneuvers, vibration, and extreme cold."); Tr. 29 (limiting Plaintiff's overhead reaching and bilateral handling "due to the combination of her inflammatory arthritis and other abnormalities involving her neck, left shoulder, and both hands," despite consultants' recommendations of lesser restrictions). The ALJ further stated that Plaintiff's impairments could reasonably be expected to cause some of her symptoms, but the evidence in the record was not consistent with the intensity, persistence, and limiting effects Plaintiff described. (Tr. 25).

To the extent that the ALJ did discount Plaintiff's subjective complaints, a review of the decision as a whole demonstrates that the ALJ adequately considered several of the relevant factors in her evaluation. The ALJ expressly cited 20 C.F.R. § 404.1529 and discussed the allegations in Plaintiff's function report, hearing testimony, and medical records (Tr. 24-29). This discussion included references to Plaintiff's medications and their reported side effects, Plaintiff's daily activities, her reported functional limitations, her assistive device, and reports on her experiences of pain. (Tr. 24-25). *See Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (citing *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)) ("Of course, '[t]he ALJ need not explicitly discuss each *Polaski* factor. It is sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints.' "); *see also Tucker v. Barnhart*, 363 F.3d 781, 783

11

(8th Cir. 2004). The ALJ also evaluated the numerous normal-to-mild musculoskeletal and neurological findings in the record, including findings of normal gait, intact grip, and full range of motion and full strength in her extremities. *See Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (an ALJ may properly determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary") (internal quotation marks and citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain).

Additionally, the ALJ considered the opinion evidence related to Plaintiff's physical impairments (which did not include any opinions indicating functional restrictions more significant than those reflected in the RFC); evidence suggesting that Plaintiff's symptoms occurred mostly in the evening or nighttime; indications of the effectiveness of medication in alleviating some of Plaintiff's symptoms; and some of Plaintiff's daily activity, such as being more active due to caring for a new puppy (Tr. 24-29). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of disabling pain and may be considered alongside other factors in assessing the severity of her subjective complaints of pain. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between the claimant's] subjective complaints and evidence regarding her activities of daily living" raised "legitimate concerns" about the weight to give to her subjective complaints); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.").

12

For the above reasons, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints was supported by substantial evidence. The Court emphasizes that the valuation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The ALJ's decision fell within the available zone of choice, and the Court cannot disturb that decision even if the evidence might have supported a different conclusion.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2025.